1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   COZETTE A. JURANITS,                    No.  2:16-cv-01966-TLN-CKD

12                   Plaintiff,

13        v.                                 <u>FINDINGS AND RECOMMENDATIONS</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16

17

18        Plaintiff Cozette A. Juranits seeks judicial review of a final decision by the Commissioner

19   of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits

20   ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the

21   Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally argues

22   that the decision of the administrative law judge ("ALJ") is based upon legal error and is not

23   supported by substantial evidence in the record.  (See ECF Nos. 19, 20.)  The Commissioner

24   opposed plaintiff's motion and filed a cross-motion for summary judgment.  (ECF No. 21.)

25   Thereafter, plaintiff filed a reply brief.  (ECF No. 22.)

26   ////

27

28   _____
     [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

After carefully considering the record and the parties' briefing, the court recommends that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion for summary judgment be GRANTED, and the Commissioner's final decision be AFFIRMED.

I.    BACKGROUND

Plaintiff was born on September 24, 1964, and has completed less than a year of college.[2] (Administrative Transcript ("AT") 52, 152.)  On October 26, 2007, plaintiff applied for DIB and SSI, alleging that her disability began on June 1, 2002.  (AT 144–46, 152–55.)  Plaintiff claimed that she was disabled due to fibromyalgia, arthritis in her back, reconstruction of left ureter, irritated (*sic*) bowel syndrome, cluster headaches, chronic pain, chronic fatigue, ulcer, disorders of the back (discogenic and degenerative) and other rheumatic heart disease.  (AT 81–84, 161–172.)  After plaintiff's application was denied initially and on reconsideration, Administrative Law Judge ("ALJ") Sharilyn Hopson conducted a hearing on February 24, 2010.  (AT 42–80.)

ALJ Hopson subsequently issued a decision dated April 9, 2010, determining that plaintiff had not been under a disability as defined in the Act, from June 1, 2002, through the date of the ALJ's decision.  (AT 30–36.)  The Appeals Council ("AC")  denied plaintiff's request for review on October 17, 2011.  (AT 6–8.)  On appeal, United States Magistrate Judge Craig Kellison determined that ALJ Hopson's adverse credibility finding was in error because "the ALJ fail[ed] to articulate what testimony was not credible and what evidence undermined that testimony."  (AT 706.)  As a result, on February 24, 2014, Judge Kellison remanded the matter for further proceedings.  (AT 709.)

On April 7, 2015, a hearing was held by ALJ Ted Neiswanger.  (AT 601–664.)  Thereafter, ALJ Neiswanger issued a decision dated June 17, 2015, determining that plaintiff had not been under a disability as defined in the Act, from June 1, 2002, through the date of the ALJ's decision.  (AT 568–77.)  ALJ Neiswanger's decision became the final decision of the

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

1   Commissioner on June 15, 2016, when the AC declined plaintiff's request to review the decision.

2   (AT 551–55.)  Plaintiff subsequently filed this action on August 19, 2016, to obtain judicial

3   review of the Commissioner's final decision.  (ECF No. 1.)

4   II.      ISSUES PRESENTED

5       On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly weighed

6   the medical opinion evidence; (2) whether the ALJ improperly discounted plaintiff's credibility;

7   and (3) whether the ALJ's RFC was without substantial evidence support.[3]

8   III.     LEGAL STANDARD

9       The court reviews the Commissioner's decision to determine whether (1) it is based on

10  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

11  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

12  evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

13  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

14  mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

15  Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

16  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

17  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

18  court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

19  interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

20      "[A] reviewing court, in dealing with a determination or judgment which an

21  administrative agency alone is authorized to make, must judge the propriety of such action solely

22  by the grounds invoked by the agency."  Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194,

23  196 (1947).  At the same time, in the context of Social Security appeals, "[a]s a reviewing court,

24  we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's

25  opinion.  It is proper for us to read the paragraph . . . and opinion, and draw inferences . . . if those

26  inferences are there to be drawn."  Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

27

28  _____

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

1 IV. DISCUSSION

2     A.    Summary of the ALJ's Findings

3     The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's

4 standard five-step analytical framework.[4] Preliminarily, the ALJ determined that plaintiff meets

5 the insured status requirements of the Act through December 31, 2007. (AT 570.) At step one,

6 the ALJ concluded that plaintiff has not engaged in substantial gainful activity since June 1, 2002,

7 the alleged onset date. (Id.) At step two, the ALJ found that plaintiff has the following severe

8 impairments: congenital adynamic left ureter with left kidney atrophy and stage I chronic kidney

9 disease and episodic flank pain; generalized osteoarthritis resulting in back and joint pain; type II

10 diabetes mellitus without complications; and right carpal tunnel syndrome. (AT 571.) However,

11 _____

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
12 Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled
persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as
13 an "inability to engage in any substantial gainful activity" due to "a medically determinable
physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel
14 five-step sequential evaluation governs eligibility for benefits under both programs. See 20
C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-
15 42 (1987). The following summarizes the sequential evaluation:

16
    Step one: Is the claimant engaging in substantial gainful activity? If so, the
17     claimant is found not disabled. If not, proceed to step two.

18
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step
19     three. If not, then a finding of not disabled is appropriate.

20
    Step three: Does the claimant's impairment or combination of impairments meet or
    equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
21     claimant is automatically determined disabled. If not, proceed to step four.

22
    Step four: Is the claimant capable of performing her past relevant work? If so, the
23     claimant is not disabled. If not, proceed to step five.

24
    Step five: Does the claimant have the residual functional capacity to perform any
25     other work? If so, the claimant is not disabled. If not, the claimant is disabled.

26 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

27     The claimant bears the burden of proof in the first four steps of the sequential evaluation
process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential
28 evaluation process proceeds to step five. Id.

at step three the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 572.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that:

> She can perform tasks involving no more than six hours of sitting, and no more than six hours of standing/walking in an 8-hour workday (with normal breaks). She requires the freedom to stand and stretch every 30 minutes for 1–3 minutes at a time. She can occasionally bend or stoop. She can frequently climb stairs, bu[]t she must avoid climbing ladders, ropes, or scaffolds. She must also avoid balancing tasks. She can occasionally turn her head and bend her neck, but she must avoid extreme head-turns or bending. She is limited to jobs that will allow her to hold her head in a comfortable position most of the time and not keep her head in a fixed position longer than 15–30 minutes at a time. She must avoid workplace hazards, including working at heights or around dangerous machinery. She should not be required to operate a vehicle as part of her job. She needs to work in a temperature-controlled environment.

(AT 572.) At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. (AT 576.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's ("VE") testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (Id.) Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the Act, since June 1, 2002, through June 12, 2015. (AT 577.)

B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.    *Whether the ALJ improperly weighed the medical opinion evidence*

Plaintiff argues that the ALJ erred by giving little weight to the opinion of consultative examiner Granville H. Marshall, Jr., MD. (See ECF No. 20 at 25–28.) The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at

1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, Dr. Marshall was an examining physician whose opinion was contradicted by opinions offered by the State agency medical consultant and an impartial medical expert. (Compare AT 53–59, 465–72, with AT 858–65.) As a result, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Marshall's opinion.

After this case was remanded, Dr. Marshall performed a consultative examination of plaintiff on September 19, 2014. (See AT 858–65.) While Dr. Marshall reviewed much of plaintiff's medical file before reaching his medical opinion, Dr. Marshall did not review the April 26, 2010 examination report from plaintiff's treating rheumatologist, William Reeder, III, MD.

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

The ALJ concluded that:

> This omission [of Dr. Reeder's report] is significant because Dr. Marshall ultimately concluded that the claimant "possibly" had fibromyalgia, lupus, Guillain-Barre syndrome, or motor lesion disorder secondary to heavy metal toxins [AT 864]. The consultative physician's hypothesis would have benefited from Dr. Reeder's conclusions as a specialist in rheumatology. Dr. Marshall[] observed no signs of muscle atrophy, but noted that the claimant's muscles seemed "soft and flaccid" [AT 863]. This is consistent with Dr. Reeder's earlier conclusion that the claimant's symptoms were the result of chronic deconditioning.
>
> Dr. Marshall ultimately adopted the claimant's subjective complaints uncritically and concluded the claimant was "definitely disabled" even though he could not make a definitive diagnosis [AT 865]. The physician indicated the claimant should "never" lift any weight whatsoever [AT 869]. The consultative physician's extreme assessment is given little weight, as he lacked crucial medical evidence relevant to the claimant's symptomology. . . . The claimant herself indicated she could perform light household chores, and that her pain symptoms did not prevent her from lifting a gallon of milk. Hence, Dr. Marshall's proposed restrictions exceed even the claimant's self-assessment—which I have found only partially credible.

(AT 575–76.)

The ALJ's conclusions are supported by substantial evidence in the record. After this case was remanded, plaintiff was treated by Dr. Reeder on April 26, 2010, for her fibromyalgia. (See AT 899–901.) However, Dr. Reeder was not convinced that plaintiff had fibromyalgia, based upon his examination. (AT 900.) He opined that her "significant muscular pain. . . is more on the basis of chronic deconditioning and exercise activities." (Id.) Moreover, Dr. Reeder encouraged plaintiff to exercise, not to refrain from physical activity. (Id.) The ALJ reasonably concluded that Dr. Marshall would have benefited from reviewing these records, especially in light of Dr. Marshall's inability to provide a definitive diagnosis of plaintiff's pain. Additionally, the ALJ appropriately relied upon plaintiff's own testimony at the 2015 hearing that she is able to lift a gallon of milk and to do light household chores. (See AT 628–29.)

Nonetheless, plaintiff argues that the ALJ's reasoning here is not supported by substantial evidence because the ALJ failed to provide a detailed summary of the facts and conflicting evidence, and because he misstated evidence in the record. (See ECF No. 20 at 26–28.) These arguments are not persuasive.

First, when "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). The ALJ did not discuss every piece of evidence in the 1253-page administrative record. However, the ALJ considered the entire record, and his conclusions are supported by substantial evidence in the record, as explained.[6] Even assuming, arguendo, that plaintiff's interpretation of the evidence is also reasonable, where the record is open to more than one interpretation, a reviewing court may not overturn the ALJ's decision if it is supported by substantial evidence, as it is here. See Edlund, 253 F.3d at 1156; Tommasetti, 533 F.3d at 1038.

Second, plaintiff argues that contrary to the ALJ's characterization of the record, "Dr. Marshall did not indicate that Plaintiff should 'never' lift any weight whatsoever." (ECF No. 20 at 27.) In his medical source statement, Dr. Marshall checked the box that plaintiff is limited to never lifting up to ten pounds. (AT 869.) In another portion of his medical opinion, Dr. Marshall also indicated that plaintiff was able to lift five pounds. (See AT 864.) Still, the ALJ's characterization that Dr. Marshall "indicated the claimant should 'never' lift any weight whatsoever" (AT 575), is reasonable in light of Dr. Marshall's check-box medical source statement, which unequivocally indicated that plaintiff should never lift up to ten pounds. (See AT 869.)

In any event, the ALJ's conclusion—that the extreme limitations proposed by Dr. Marshall conflict with the plaintiff's own testimony and other medical evidence in the record—stands to reason, whether Dr. Marshall's limitations are read as "no lifting" or "only lifting five pounds" because either characterization conflicts with the evidence cited by the ALJ. Thus, even if the ALJ erred in this discrete characterization of the record, any error is harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

---

[6] Indeed, the record is more ambiguous than plaintiff admits. In her briefs, plaintiff only points out evidence the ALJ did not explicitly mention that supports plaintiff's argument. For example, plaintiff ignored the fact that Dr. Reeder was not the only practitioner who encouraged plaintiff to exercise, rather than avoid physical activity. During an office visit on June 1, 2012, treating physician Melissa Tasista, DO encouraged patient to engage in "core strengthening exercises." (AT 923.)

Therefore, the court finds that the ALJ did not err when affording little weight to Dr. Marshall's opinion because he provided specific and legitimate reasons, supported by substantial evidence.

2.  *Whether the ALJ improperly discounted plaintiff's credibility*

Plaintiff argues that the ALJ made an erroneous credibility determination against plaintiff that is not supported by substantial evidence. (See ECF No. 20 at 20–25.)  In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ."  Molina, 674 F.3d at 1112.

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir.

9

2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

ALJ Hopson's April 9, 2010 decision was remanded because ALJ Hopson "fail[ed] to articulate what testimony was not credible and what evidence undermined that testimony." (AT 36, 706.) On remand, ALJ Neiswanger did not entirely discredit plaintiff's allegations of pain and limitations. Indeed, the ALJ limited plaintiff to light work, with other specific limitations as listed in the RFC. (See AT 572.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and functional limitations, the ALJ articulated what testimony was not credible and provided several specific, clear, and convincing reasons for doing so. ALJ Neiswanger explained,

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

> In assessing the claimant's residual functional capacity, I considered her testimony regarding pain and discomfort. Pain, when associated with a medically determinable impairment that could produce pain, may be of such severity as to cause an individual to be under a disability. The claimant's inability to work without some pain and discomfort, however, does not necessarily satisfy the test for disability under the provision of the ACT.

(AT 574) Specifically, ALJ Neiswanger determined that plaintiff's complaints of pain were not entirely credible, based upon her work record, the objective medical evidence, and her daily activities. (AT 574–75.)

### i. Work record post alleged onset date

The ALJ identified that plaintiff's alleged limitations conflict with the part-time work she performed for years after June 1, 2002, the alleged onset date of her disability:

> While her earnings from [her part-time work as a home attendant] were modest at best, she nevertheless engaged in physical activity inconsistent with her allegedly debilitating pain condition. In addition to the meal preparation, transportation, and light housekeeping she provided to elderly friends and family, medical

10

> records from late 2010 suggest her responsibilities also involved heavy lifting. She reportedly found her grandmother on the bathroom floor and helped lift her up [AT 966]. While the episode caused significant soreness for the claimant afterwards, it suggests that she can lift significantly more than a milk carton.

(AT 574.) Such inconsistency is an appropriate reason for the ALJ to discount the plaintiff's testimony. See Thomas, 278 F.3d at 958–59. Moreover, the ALJ's conclusions are supported by substantial evidence in the record, as he relied on plaintiff's hearing testimony (see AT 608) and information she reported to her family nurse practitioner on November 17, 2010. (See AT 966.)

### ii.    Objective medical evidence

In addition, ALJ Neiswanger discounted plaintiff's testimony, based upon inconsistencies between plaintiff's complaints and the objective medical evidence in the record. (See AT 574–75.)

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, the ALJ pointed out that "none of the claimant's treatment providers have endorsed the conclusion that her chronic pain symptoms limit her to the sedentary lifestyle described in her testimony." (AT 574.) The ALJ then relied on the April 2010 fibromyalgia assessment performed by plaintiff's treating rheumatologist, Dr. Reeder, who concluded that plaintiff's "significant muscle pain was likely attributable to 'chronic deconditioning' and that it was important for her to develop a regular cardiovascular fitness program that incorporated core muscle strengthening 2–3 times daily." (Id.) This is supported by Dr Reeder's medical records. (See AT 900.) The ALJ's conclusion is also supported by an office visit on June 1, 2012, when treating physician Melissa Tasista, DO encouraged patient to engage in "core strengthening exercises." (AT 923.) Therefore, substantial evidence in the record supports the ALJ's conclusion that plaintiff "not only . . . remains capable of increased activity, but that such activity

is medically indicated to improve her overall functioning." (AT 574.)

The ALJ also determined that plaintiff's complaints of disabling pain are undermined by the fact that narcotic pain medication is not medically indicated for her condition. (Id.) This conclusion is supported by substantial evidence in the record. Specifically, as the ALJ stressed, on February 3, 2015, treating physician Matthew Edmonds, MD "reported that narcotics are 'wholly inappropriate' for the claimant's particular pain symptoms." (AT 574, 1055–56.) Then, on February 23, 2015, Dr. Edmonds noted "that after ceasing narcotic pain medication, the claimant denied any acute complaints and presented as 'appropriately groomed and in no apparent distress.'" (AT 574, 1052.)

### iii.     Daily activities

ALJ Neiswanger further found that plaintiff's daily activities are inconsistent with her allegations of disabling symptoms and limitations. (AT 573–75.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, the ALJ relied on plaintiff's testimony that she could "still help care for the family's animals, as well as perform light householder chores, such as washing dishes and doing laundry... [and that] she could still lift a gallon of milk despite discomfort." (AT 573–74.) The ALJ also pointed out that plaintiff was capable of making the "4-hour car trip to the hearing site with only

two brief breaks."  (AT 574–75.)  The ALJ's observations are based upon substantial evidence in the record.  (See AT 609, 628–29.)

To be sure, the record also contains some contrary evidence—such as plaintiff needing to lie down four to six hours during the day due to pain, and that she had to wear a back brace and recline her seat during the car ride to the hearing—suggesting that plaintiff's activities are more limited.  (AT 609, 617.)  However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").  As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible.  But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

### iv.        Improper reason with other proper reasons for discounting credibility

The ALJ also concluded that plaintiff's "subjective pain complaints may have been motivated by drug seeking" tendencies because plaintiff "testified at the hearing that she could no longer be prescribed narcotic pain medication because she has an 'addictive' personality."  (AT 574.)  This leap of logic is not supported by substantial evidence in the record, as there is no indication from any treating physician that plaintiff was drug seeking or abusing her narcotic medications.  At the same time, this error is harmless because the ALJ provided several other valid reasons for only partially crediting plaintiff's testimony.  See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

13

3. *Whether the ALJ's RFC was without substantial evidence support*

Plaintiff argues that ALJ Neiswanger erred when he adopted the RFC that was provided by ALJ Hopson in 2010, because ALJ Neiwswanger determined that plaintiff had additional severe impairments—left flank pain and carpal tunnel syndrome—that ALJ Hopson did not find severe in 2010. (ECF No. 20 at 13.) Additionally, plaintiff asserts that the ALJ failed to consider the comorbidity of plaintiff's impairments. (ECF NO. 20 at 17.)

First, an ALJ need not craft an RFC in a certain fashion to ensure that it accounts for all of a claimant's severe impairments. Rather, an RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. See Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222–23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

Second, the RFC here provides plaintiff with significant limitations—no more than six hours of sitting; no more than six hours of standing/walking; freedom to stand and stretch every 30 minutes for 1–3 minutes at a time; no climbing ladders, ropes, or scaffolds; no extreme head-turns or bending; etc. (see AT 572)—that ALJ Neiswanger determined based upon a review of the entire record, including plaintiff's severe and non-severe impairments.

While plaintiff interprets the evidence differently than the ALJ did, and would have crafted a more restrictive RFC, the court must uphold the ALJ's RFC if supported by substantial evidence. See Tommasetti, 533 F.3d at 1038. For the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. Therefore, the court finds that the RFC is supported by substantial evidence.

/////

14

V.     CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.     Plaintiff's motion for summary judgment (ECF No. 19) be DENIED.

2.     The Commissioner's cross-motion for summary judgment (ECF No. 21) be GRANTED.

3.     The final decision of the Commissioner be AFFIRMED, and judgment be entered for the Commissioner.

4.     The Clerk of Court be ordered to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated:  December 15, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

14/ss.16-1966.juranits.f&r.MSJ

15